PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LEAFFILTER NORTH, LLC, *et al.*, | ) |
| | ) CASE NO. 5:26-cv-44 |
| Plaintiffs, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| CURTIS MARSHALL, | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) [Resolving ECF No. 2] |

This matter comes before the Court on Plaintiffs' Motion for Emergency Temporary Restraining Order and Preliminary Injunction. ECF No. 2. The Court conducted a hearing on January 12, 2026 at which oral argument was heard. Having been duly advised, the Court grants Plaintiffs' Motion for a Temporary Restraining Order.

### I.  BACKGROUND

**A. Stipulated Facts**

Consistent with the Court's Order setting this matter for a hearing, the parties timely submitted a Joint Stipulation of Facts (ECF No. 12), which provides:

1. Plaintiff LeafFilter LLC ("LeafFilter") markets and sells its proprietary gutter protection product that prevents leaves and debris from clogging the inside of gutters across the United States. LeafFilter also markets, sells, and arranges for ancillary services, including the installation of gutters, soffits, fascia, downspouts, drip edges, flashing, and roofline lighting.

2. LeafFilter is a wholly owned subsidiary of Plaintiff Leaf Home, LLC ("Leaf Home"). Leaf Home sells and installs water treatment solutions through its wholly owned subsidiary, Leaf Home Water Solutions, LLC, a Delaware limited liability company; sells and installs stair lifts and vertical lifts through its wholly owned subsidiary, Leaf Home Safety Solutions, LLC, a Delaware limited liability company; and sells and installs bath, shower, and bath remodeling home remodeling through its wholly owned subsidiary,

(5:26CV44)

>  Leaf Home Bath, LLC, a Delaware limited liability company, previously sold by Leaf Home Enhancements, LLC, a Delaware limited liability company.

3. Defendant Curtis Marshall was employed by LeafFilter from August 1, 2016 until December 31, 2025.

4. Marshall is party to the Employment Agreement with LeafFilter effective as of April 1, 2024 (the "Employment Agreement"). The Parties stipulate that a true and accurate copy of the Employment Agreement is attached to the Complaint. ECF No. 1-2.

5. On April 22, 2024, Marshall executed a Joinder (the "Joinder") to Limited Liability Company Agreement of LeafFilter Management Aggregator, LLC ("Leaf Management Agreement"). The Parties stipulate that a true and accurate copy of the Joinder and Leaf Management Agreement are attached to the Complaint. ECF No. 1-3; ECF No. 1-4.

6. The Parties stipulate that a true and accurate copy of the Amended and Restated Limited Liability Company Agreement of Leaf Holdings, LLC dated September 30, 2016 is attached to the Complaint. ECF No. 1-5.

7. On April 22, 2024, Marshall executed an RSU Award Agreement Pursuant to the Leaf Holdings LLC 2016 Equity Incentive Plant (the "RSU Award"). The Parties stipulated that a copy of the RSU Award is attached to the Complaint. ECF No. 1-6.

8. On April 22, 2024, Marshall executed a PSU Award Agreement Pursuant to the Leaf Holdings LLC 2016 Equity Incentive Plant (the "PSU Award"). The Parties stipulated that a copy of the PSU Award is attached to the Complaint. ECF No. 1-7.

9. On December 29, 2025, Marshall submitted notice of his intent to resign his employment with LeafFilter effective January 2, 2026.

10. LeafFilter accelerated Marshall's separation date with LeafFilter and accepted his resignation effective December 30, 2025.

11. On January 5, 2026, Marshall became employed by Premier Home Pros, LLC as its Chief Sales Officer.

### B. Factual Background

Defendant Curtis Marshall was employed by LeafFilter from August 1, 2016, until December 30, 2025. In 2024, he was promoted to Vice President of Sales West and executed several agreements relative to his employment. ECF No. 12. On December 29, 2025, Marshall submitted notice of his resignation, effective January 2, 2026. Plaintiffs made his resignation effective December 30, 2025. By Verified Complaint, Plaintiff's alleges that, between

2

(5:26CV44)

December 23 and December 30, 2025, Defendant accessed, altered, and downloaded hundreds of files containing data Plaintiffs considered confidential and proprietary information and trade secrets.  ECF No. 1.  In addition, Defendant downloaded 95 files to a PHOTOSTICK device, including pricing sheets, sales training materials, sales representative compensation plans, and other similar materials.  ECF No. 13-1 at PageID ##: 352–54.  Now Defendant is employed as Chief Sales Officer by Premier Home Pros, LLC ("Premier"), a direct and indirect competitor of Plaintiffs.  ECF No. 1, ⁋ 4; ECF No. 12, ⁋ 11.

1. *Employment Agreement*

The Employment Agreement states:

> WHEREAS, the Company and its affiliates have engaged in, and shall continue to engage in, the business of the design, marketing and selling or renovation and remodeling products and services including gutters, gutter filters and providing related gutter cleaning, re-sealing, realignment and installation services and also including: aging-in-place products and services including walk in tubs, accessible showers, stair lifts, and ramps; baths (regular), windows, doors, roofing and similar exterior solutions products; and water filtration and treatment.

ECF No. 1-2 at PageID #: 45.  The Employment Agreement also includes a nondisclosure and nonuse of confidential information provision, enshrined at Section 6.  That provision reads, in relevant part:

> The Executive shall not, directly or indirectly, disclose or use at any time without the written consent of the Company, either during the Employment Period or thereafter, and Confidential Information . . . of which the Executive is or becomes aware, whether or not such information is developed by him[.]

ECF No. 1-2 at PageID #: 50.  The term "Confidential Information" is defined as "information that is not generally known to the public and that is used, developed or obtained by the Company or any Affiliate in connection with its business . . . concerning the business or affairs of the Company

3

(5:26CV44)

or its Affiliates." ECF No. 1-2 at PageID #: 51. Such information includes, *inter alia*, product and service information, costs and pricing, designs, analyses, charts, databases, accounting and business methods, customer and client lists, and other business strategies. ECF No. 1-2 at PageID #: 51.

Finally, the Employment Agreement contains a Non-Competition; Non-Solicitation; Non-Disparagement clause which prohibits Defendant from "directly or indirectly" owning, managing, controlling, consulting, or participating in any business competing with LeafFilter and its affiliates. ECF No. 1-2 at PageID #: 52. Defendant is also prohibited from soliciting any employees, independent contractors, or customers. ECF No. 1-2 at PageID #: 53. This restriction is limited to one year (with possibility of an extension of up to twelve additional months) and incompasses Ohio, the continental United States, Alaska and Hawaii, and other U.S. territories, and any other country in which Plaintiffs conduct business.[1] ECF No. 1-2 at PageID #: 52.

### 2. *Joinder, Leaf Management Agreement, and Amended Leaf Management Agreement*

Defendant also executed the Joinder, which incorporates by reference, Section 3.5 of the Leaf Management Agreement and Section 21.13. ECF No. 1-3; ECF No. 12, ¶ 5. Those provisions provide, in relevant part, as follows:

> 3.5 Non-Compete; Non-Solicit.
>
> (a) The Non-Compete and Non-Solicit covenants set forth in Section 21.13 of the Leaf Holdings Agreement are hereby incorporated by reference in their entirety and shall apply to each Member . . .
>
> (b) Each Member acknowledges and agrees that the covenants contained in Section 21.13 of the Leaf Holdings Agreement and incorporated herein pursuant to Section 3.5(a) are a part of this otherwise enforceable agreement to consummate the transactions

---

[1] During the hearing, Plaintiffs' counsel said that Canada is included.

4

(5:26CV44)

> described herein. Each Member understands that the foregoing restrictions may limit the ability of such Person to earn a livelihood in a business similar to the Business, but such Person nevertheless believes that he, she or it has received and will receive sufficient consideration and other benefits hereunder to clearly justify such restrictions which, in any event, such Person does not believe would prevent him, her or it from otherwise earning a living. Member acknowledges and agrees that (i) the Sponsor Investor has required that each Member make the covenants set forth in this Section 3.5 as a condition to the Purchaser's obligations to consummate the transactions contemplated by the Purchase Agreement and (ii) the provisions of this Section 3.5 are reasonable and necessary to protect and preserve the legitimate interests of the Business.

ECF No. 1-4 at PageID #: 74.

> 21.13 Non-Compete; Non-Solicit.
> (a) . . . Therefore, during the Non-Compete Period . . . [Defendant] shall [not] directly or indirectly, own, manage, control, participate in, consult with, render services for, receive any economic benefit from or exert any influence upon, or in any manner engage in or represent any business within any Restricted Territory that is competitive with the business and/or services of the Company, its subsidiaries and other Affiliates . . .

ECF No. 1-5 at PageID #: 139. As with the Employment Agreement, the Leaf Management Agreement explicitly prohibits Defendant from soliciting Plaintiffs' employees, independent contractors, or customers. The "Restricted Territory" includes Ohio, the Continental United States, Alaska and Hawaii, and U.S. territories, and Canada. ECF No. 1-5 at PageID #: 151. Notably, however, the "Non-Compete Period" includes Defendant's employment term and three years thereafter. ECF No. 1-5 at PageID #: 150.

3. *The RSU Award and PSU Award*

Finally, the RSU Award and PSU Award each contain virtually identical nondisclosure and nonuse provisions that state:

> The Participant shall not, directly or indirectly, disclose or use at any time . . . either during the Participant's period of service or thereafter, any Confidential Information . . . of which the Participant

5

(5:26CV44)

> is or becomes aware of, whether or not such information is developed by the Participant.

ECF No. 1-6 at PageID #: 184; ECF No. 1-7 at PageID #: 200. As in the Employment Agreement, the term "Confidential Information" is defined as "information that is not generally known to the public and that is used, developed or obtained by the Company or any Affiliate in connection with its business . . . concerning the business or affairs of the Company or its Affiliates." ECF No. 1-6 at PageID #: 184–85; ECF No. 1-7 at PageID #: 200–01. Both agreements also include a non-competition provision that is virtually identical to the Employment Agreement provision. ECF No. 1-6 at PageID #: 185–86; ECF No. 1-7 at PageID #: 202–03.

## II. STANDARD OF REVIEW

Four factors are important in determining whether a temporary restraining order is appropriate: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 387 (6th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp.2d 682, 687 (N.D. Ohio 2002) (O'Malley, J.); *see also Reid v. Hood*, No. 1:10 CV 2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (Gwin, J.) (noting that "standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo") (citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977)).

6

(5:26CV44)

The test is a flexible one and the factors are not prerequisites to be met but must be balanced.  *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).  "The burden of proving that the circumstances 'clearly demand' such an extraordinary remedy is a heavy one: '[t]he party seeking the injunction must establish its case by clear and convincing evidence.'" *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 1179955, at *4 (S.D. Ohio March 13, 2015) (quoting *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)); *Honeywell, Inc. v. Brewer-Garrett Co.*, No. 97-3673, 1998 WL 152951, at *3 (6th Cir. March 23,1998)).

### III.   DISCUSSION

**A. Plaintiffs' Likelihood of Success on the Merits**

The Court must first determine whether Plaintiffs demonstrated a strong likelihood of success on the merits of their claims underlying the present Motion.  "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales*, 225 F.3d at 625.  While Plaintiffs need not prove their case, they must show more than a mere possibility of success.  *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007).

*1. Breach of contract claims*

To succeed on the merits of their breach of contract claims under Ohio law, Plaintiffs must demonstrate: (1) the existence of a contract; (2) performance by Plaintiffs; (3) breach by Defendant; and (4) damage or loss to Plaintiffs resulting from Defendant's breach.  *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).

It is undisputed that there are four agreements signed by both parties.  ECF No. 12.  Each agreement contains several restrictive covenants, including nondisclosure and nonuse of

7

(5:26CV44)

information clauses along with non-competition, non-solicitation, and non-disparagement clauses.  It is also undisputed that, after resigning from LeafFilters, Defendant accepted an executive sales position at Premier, one of Plaintiffs' direct competitors in bathroom remodeling products and services.

Defendant attempts to distinguish his responsibilities at LeafFilter from those at Premier, by arguing that he only worked with Plaintiffs' gutter protection products and services, which Premier does not provide.  His argument is not well taken.

Section 21.13 of the Leaf Management Agreement (ECF No. 1-4 at PageID #: 139) prohibits him from competing with any "businesses and/or services of the Company, its Subsidiaries and other Affiliates."  Plaintiffs' business and services includes bathroom remodeling.  Moreover, Plaintiffs argue that in his position as a senior vice president, Defendant was exposed to, had knowledge of, and helped to develop many of Plaintiffs' sales strategies and analyses which are used across Plaintiffs' numerous home improvement markets.

Accordingly, the Court finds, at this juncture, that Defendant's exposure and knowledge of Plaintiffs' sales strategies and *modus operandi* across numerous home improvement markets is sufficient to demonstrate that Defendant has breached the non-competition provisions of his employment contracts.

   2. *Enforceability of the restrictive covenants*

Before granting a TRO, the Court must also determine whether the restrictive covenants are enforceable.  Under Ohio law, a non-compete clause is enforceable only if "the employer can show by *clear and convincing evidence* that the restrictions imposed . . . (1) are no greater than necessary for the protection of the employer's legitimate business interests, (2) do not impose undue hardship on the employee, and (3) are not injurious to the public."  *Brentlinger*

(5:26CV44)

Enterprises v. Curran, 141 Ohio App.3d 640, 645-46 (2001) (citing Raimonde v. Van Vlerah, 42 Ohio St.2d 21 (Ohio 1975) at paragraph two of the syllabus)) (emphasis added).  The Ohio Supreme Court provides nine fact-specific considerations for determining if a restrictive covenant is reasonable, including whether:

1. The restriction is temporally and spatially limited;

2. The employee represents the sole contract with the customer;

3. The employee is possessed with confidential information or trade secrets;

4. The covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition;

5. The covenant seeks to stifle the inherent skill and expertise of the employee;

6. The benefit to the employer is disproportional to the detriment of the employee;

7. The covenant operates as a bar to the employee's sole means of support;

8. The employee's talent which the employer seeks to suppress was actually developed during the period of employment; and

9. The forbidden employment is merely incidental to the main employment.

See Raimonde, 42 Ohio St.2d at 25; FirstEnergy Sols. Corp. v. Flerick, 521 F. App'x 521, 526 (6th Cir. 2013).  Whether these factors weigh in favor of reasonableness and enforceability is fact dependent.  Considering the facts currently before the Court finds the restrictive covenants are reasonable and, therefore, enforceable.

      i. <u>The restrictions are likely no greater than necessary to protect Plaintiffs' legitimate business interests.</u>

Plaintiffs have demonstrated that the restrictive covenants at issue are likely no greater than necessary to protect legitimate business interests.  As an initial matter, protecting confidential information and trade secrets is indubitably a legitimate business interest.

9

(5:26CV44)

*FirstEnergy Sols.*, 521 F. App'x at 528. The employment contracts at issue in this case explicitly protect such interests, and details specific information that is protectable. *See, e.g.,* ECF No. 1-2 at PageID #: 51.

The temporal and geographical scope of the covenants appears reasonably tailored to protect Plaintiffs' business interests. Ohio courts have held that one-year restrictive periods are reasonable depending on the circumstances. *See, e.g., MetroHealth Sys. V. Khandelwal*, 2022-Ohio-77, ⁋ 24 (8th Dist.); *Union Home Mortg. Corp. v. Ballew*, 2025 WL 3750726, at *21 (N.D. Ohio Dec. 29, 2025) (Calabrese, J.). Several courts have also found a three-year restrictive period to be reasonable. *See, e.g., Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 276 (1st Dist. 2000) (holding that three years was reasonable because the confidential information to which defendant had access was useful up to three to five years); *Raimonde*, 42 Ohio St.2d at 28 (upholding a three-year restrictive covenant). In this case, Plaintiffs have sufficiently demonstrated that Defendant's access to and knowledge of confidential and proprietary sales strategies and systems likely justifies at least a one-year, if not a three-year, restrictive period.

Similarly, courts have upheld nationwide restrictions, particularly when the employer operates in a multi-state industry or market. *Try Hours, Inc. v. Douville*, 985 N.E.2d 955, 966 (Ohio App. Ct. 2013) (holding a nationwide noncompete clause was reasonable given the multi-state nature of the trucking industry); *Horter Inv. Mgmt. LLC v. Cutter*, 257 F. Supp. 3d 892, 905 (S.D. Ohio 2017) (holding that a national restriction reasonable because the employer's business was national). Defendant argues the worldwide scope of the covenants is excessive because he only provided services for Plaintiffs' operations in Western states and in his new position, he would be working in Eastern states. ECF No. 11 at PageID #: 275. Plaintiffs retort that they

10

(5:26CV44)

operate nationally (ECF No. 2 at PageID #: 221) and that Defendant, as a senior executive, had access to and helped develop sales strategies that Plaintiffs use across industries and markets, including the Eastern United States. Therefore, Plaintiffs have sufficiently demonstrated a strong likelihood that geographical scope of the restriction, which encompasses the United States and Canada, is reasonable.

Furthermore, Plaintiffs proffered sufficient evidence at this stage in the litigation to demonstrate Defendant has possession of confidential information or trade secrets. Plaintiffs' Director of Security and Compliance submitted an affidavit with exhibits showing Defendant copied 95 files from his LeafFilter-issued laptop to a PHOTOSTICK,[2] including files titled, *inter alia*, (1) "ALL VERTICALS 3.8.24.xlsx," (2) "2025 REGIONAL SALES LIST REVISED.xlsx," (3) "2025 Weekly Ops Manager Activity – Final Master Copy.pdf," (4) "LBLF_Pricing_Sheet_2025_v5.pdf," "Sales-Rep-Training-Manual-LF-U-S-010-8.5x11_JAN-2023-Digital.pdf," (5) "2022 Potential Office Opening.xlsx," and (6) "AROpenInvoiceswithasofDate-797.xlsb." ECF No. 13-1 at PageID ##: 353–54. Plaintiffs explain that these files contain highly confidential and proprietary information about its operations and strategies across its various businesses. ECF No. 2 at PageID #: 218. Evidence that a former employee possesses intimate knowledge of and access to such information is sufficient to demonstrate possession of confidential information. *Union Home Mortg. Corp. v. Ballew*, 2025 WL 3750726, at *21 (N.D. Ohio Dec. 29, 2025). Permitting a former employee with access to such information to "immediately begin working for a direct competitor" is the type of unfair competition properly prohibited by restrictive covenants. *FirstEnergy Sols.*, 521

---

[2] This appears to be a portable external storage device.

11

(5:26CV44)

F. App'x at 527. Defendant offers no explanation for copying these 95 files other than to argue weakly that he accessed the files because he thought he would need them in the event LeafFilter blocked his access to the company's OneDrive during his last weeks of work. ECF No. 11; ECF No. 14, ¶¶ 28 - 32.

Defendant is now employed by a direct competitor in a similar position to the one he held at LeafFilter. That his current employment requires him to sell bathroom remodeling products and services, rather than gutter protection products, does not make his employment less competitive with Plaintiffs' bathroom remodeling business, and appears to be within the realm of activity prohibited by the noncompetition clauses Defendant agreed to abide by.

At this juncture, Plaintiffs have met their burden to show by clear and convincing evidence that Defendant likely has possession of or access to LeafFilter's confidential and proprietary information, that he is directly competing with LeafFilter's business, and that such competition is likely unfair.

> ii. <u>The restrictive covenants likely do not impose undue hardship on Defendant.</u>

Defendant argues that his sales experience developed within the home improvement industry and that the restrictive covenants would impinge his ability, as the sole provider, to support his family. ECF No. 11. Although Defendant's sales experience has been limited to the home improvement industry, he has not demonstrated his talents and skills are so niche as to preclude him from other types of sales positions. During the hearing, Plaintiffs pointed out that LeafFilter's businesses do not encompass all home improvement industries, noting that they do not work in siding, windows, kitchen remodeling, or patio construction. As such, Defendant likely has alternative employment options within and outside the home improvement industry. Moreover, the effect of any limitation on competitive employment, for a period of time, on

12

(5:26CV44)

Defendant's ability to "earn a livelihood in a business similar to Plaintiffs" was anticipated. *See* ECF No. 1-4 at PageID #: 74, Section 3.5. By signing the Aggregator Agreement, Defendant agreed that he had or would receive "sufficient consideration" "to clearly justify such restrictions." ECF No. 1-4 at PageID #: 74, Section 3.5.

### iii. The restrictive covenants are likely do not injure to the public.

As explained further below, the public has an interest in courts enforcing contractual provisions. Plaintiffs do not seek to prohibit ordinary competition, nor do the restrictive covenants prevent the public from choosing which company they entrust with home renovation projects. Accordingly, the Court finds that enforcing the restrictive covenants will not likely injure the public.

### 3. *Misappropriation claims*

Plaintiffs allege Defendant misappropriated its confidential and proprietary information and trade secrets, in violation of the Defendant Trade Secrets Act ("DTSA") and the Ohio Uniform Trade Secrets Act ("OUTSA"). ECF No. 1, Counts V–VI. To succeed on a DTSA claim, Plaintiffs must demonstrate: "(1) the existence of a trade secret[;] (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret[.]" *In re Island Indus., Inc.*, No. 23-5200, 2024 WL 869858, 2024 U.S. App. LEXIS 5077 (6th Cir. Feb. 29, 2024) (quotation and citation omitted). Similarly, to succeed on an OUTSA claim, Plaintiffs must show: "(1) the existence of a trade secret; (2) acquisition of a trade secret as a result of a confidential relationship or through improper means; and (3) an unauthorized use of the trade secret." *Novus Grp., LLC v. Prudential Fin., Inc.*, 74 F.4th 424, 427–28 (6th Cir. 2023) (citing *Tomaydo-Tomahhdo L.L.C. v. Vozary*, 82 N.E.3d 1180, 1184 (Ohio Ct. App. 2017)). Given the similarities between the two statutes and the

13

(5:26CV44)

requirements for both federal and Ohio laws, courts generally consider DTSA and OUTSA claims together. *C.R.H. Industrial Water, LLC v. Eiermann*, No. 1:23-cv-1805, 2024 WL 4856109, at * 3 (N.D. Ohio Nov. 21, 2024).

In this case, Defendant does not contest that the files at issue contain confidential and proprietary information or trade secrets. ECF No. 11. Rather, Defendant insists that he did not misappropriate such information. In particular, Defendant claims that none of the information cited by Plaintiffs relates to their bathroom remodeling business. He also argues that Plaintiffs have failed to identify beyond speculation that Defendant has already or will disclose Plaintiffs' information to Premier. ECF No. 11 at PageID #: 278. Defendant misapprehends Plaintiffs' burden.

While Plaintiffs "must demonstrate actual misappropriate at trial, under Ohio law, the Court may grant injunctive relief upon a showing of actual or *threatened* misappropriation of trade secrets." *Union Home Mortg. Corp. v. Fratelli*, No. 1:23-cv-857, 2025 WL 639315, at *8 (N.D. Ohio Feb. 27, 2025) (Fleming, J.) (citing *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 968 (6th Cir. 2002)) (original emphasis).

Although not fully articulated, Plaintiffs rely on the inevitable disclosure doctrine. *See* ECF No. 2 at PageID #: 228. The inevitable disclosure doctrine states that "when an employee with detailed, comprehensive knowledge of an employer's trade secrets and confidential information begins employment with a competitor in a substantially similar position, [his] disclosure of trade secret information is inevitable." *MP TotalCare Servs., Inc.* v. *Mattimoe*, 648 F. Supp. 2d 956, 969 (N.D. Ohio 2009) *(citing Berardi's Fresh Roast Inc. v. PMD Enters., Inc., 2008 WL 4681825, *4 (Ohio Ct. App. Oct. 23, 2008))*. The doctrine establishes a threat of harm sufficient to warrant injunctive relief preventing a defendant from entering an employment

14

(5:26CV44)

situation which would lead to the "inevitable disclosure" of confidential information. *Hydrofarm, Inc. v. Orendorff*, 905 N.E.2d 658 (Ohio Ct. App. 2008); *Procter & Gamble Co. v. Stoneham*, 747 N.E.2d 268 (Ohio Ct. App. 2000) (injunctive relief can be shown by facts establishing that an employee with detailed knowledge of an employer's trade secrets has begun employment with a competitor of the former employer in a position that is substantially similar to the position held during the former employment).

Plaintiffs have established that Defendant, in his position as a senior vice president, had access to and knowledge of LeafFilter's confidential and proprietary information. Indeed, Defendant was responsible for developing some of that information. ECF No. 2 at PageID #: 221. Now, in a similar position with Premier, a direct LeafFilter competitor, Defendant is ideally situated to use or disclose (intentionally or inadvertently) such information to Plaintiffs' detriment. Therefore, Plaintiffs have met their burden to demonstrate Defendant's misappropriation of LeafFilter's trade secrets and confidential information will inevitably be disclosed.

### B. Irreparable Harms

"An irreparable injury is one for the redress of which . . . there could be no plain, adequate and complete remedy at law, and for which [money damages] would be impossible, difficult or incomplete." *Ohio Turnpike Comm'n v. Texaco, Inc.*, 35 Ohio Misc. 99, 105, 297 N.E.2d 557 (1973). As in the case at bar, "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute," and "[s]imilarly, the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer." *Basicomputer Corp. v. Scott*, 973 F.2d 507,

15

(5:26CV44)

512 (6th Cir. 1992); *see also* Brakefire, Inc. v. Overbeck, 144 Ohio Misc.2d 35, 64, 878 N.E.2d 84 (2007) (citing *Basicomputer*).

As discussed above, Plaintiffs' have demonstrated a likelihood of success on the merits for both a breach of the restrictive covenants and misappropriation of trade secrets. Without an injunction, Defendant would be able to disclose Plaintiffs' confidential information he acquired before leaving LeafFilter and joining Premier. Even if Defendant had not downloaded confidential files, his prior access to and knowledge of such information, compounded by the fact that he helped to develop some of that information, puts him in a position to use and even recreate such information for a direct competitor, causing Plaintiffs' irreparable harm.

### C. Harm to Others and Public Interest

The only entities that stand to suffer injury or adverse effects in this case are LeafFilter (and its affiliates) and Defendant. Enforcing the restrictive covenants would not foreclose Defendant from working in the home improvement industry, nor eliminate the public's ability to choose a home improvement company. Moreover, and as the Court stated at the conclusion of the electronic hearing, contractual obligations matter. "[P]reserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest." Century Bus. Servs., Inc. v. Urban, 179 Ohio App.3d 111, 118, 900 N.E.2d 1048 (2008); FirstEnergy Sols., 521 F. App'x at 529 (quoting National Interstate Ins. Co. v. Perro, 934 F. Supp. 883, 891 (N.D. Ohio 1996)) ("[T]he public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts.").

All four factors support granting temporary injunctive relief and, therefore, Plaintiffs' Motion for Emergency Restraining Order is granted.

(5:26CV44)

### D. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount the court considers proper to pay the costs and damages sustained by any party to have been wrongfully enjoined or restrained." Fed. R. Civ. Pro. 65(c). The Court has broad discretion to set the bond amount, *see* Static Control Components, Inc. v. Lexmark, Int'l Inc., 697 F.3d 387, 400 (6th Cir. 2012), and to require no bond where there is no proof of likelihood of harm. Ferguson v. Tabah, 288 F.2d 665, 675 (2d Cir. 1961) (citing Urbain v. Knapp Bros. Mfg. Co., 217 F.2d 810 (6th Cir. 1954)). The Court is satisfied that no bond is necessary in this case and, therefore, shall require Plaintiffs to post a zero dollar ($0.00) bond.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Emergency Temporary Restraining Order (ECF No. 2) is granted. The Court orders as follows:

(1) Defendant, and all persons who are in active concert or participation with Defendant, are enjoined from further breaches of the restrictive covenants contained within the following agreements:

   a. Employment Agreement (ECF No. 1-2),

   b. LeafFilter Management Aggregator LLC Limited Liability Company Agreement (ECF No. 1-4) and its amendment (ECF No. 1-5),

   c. RSU Award Agreement Pursuant to Leaf Holdings LLC 2016 Equity Incentive Plan (ECF No. 1-6), and

   d. PSU Award Agreement Pursuant to Leaf Holdings LLC 2016 Equity Incentive Plan (ECF No. 1-7).

(5:26CV44)

(2) Defendant, and all persons who are in active concert or participation with Defendant, are enjoined from any misappropriate of Plaintiffs' trade secrets.

This Temporary Restraining Order shall remain in effect for fourteen (14) days from the date of entry (January 12, 2026, at 3:15 p.m.) and shall expire, unless extended for a period not to exceed another fourteen (14) days, or unless Defendant consents to an extended period.

A preliminary injunction hearing is scheduled for Monday, January 26, 2026, at 1:30 p.m. in Courtroom 351 before the undersigned.  A separate scheduling and briefing Order shall issue prior to the expiration of this Temporary Restraining Order.

IT IS SO ORDERED.

| | |
|---|---|
| January 14, 2026 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |